**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMUNITY OPTIONS, INC. <br><br> Defendant. | Case No. |

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Allied World Assurance Company (U.S.) Inc. (hereinafter, "Allied World"), by and through its attorneys, Kennedys CMK LLP, and files this its Complaint for Declaratory Relief against Defendant Community Options, Inc. ("Community Options") and shows unto the Court as follows:

**NATURE OF ACTION**

1. This is an action for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of the rights and obligations of the parties under the insurance policy at issue. Specifically, Allied World seeks a declaration that it owes no coverage to Defendant under an insurance policy it issued to Community Options with respect to the underlying litigation captioned *David Romero, Jr., as Wrongful Death Personal Representative of the Estate of Victor Dykes v. Community Options, Inc., et al.*, pending in the State of New Mexico, County of San Miguel, 4th Judicial District Court, and bearing docket number D-412-CV-2023-00168 (the "*Dykes* Suit").

2. Community Options failed to notify Allied World of the *Dykes* Suit until more than two years after its commencement, materially breaching several conditions of the subject insurance policy issued by Allied World.

3. Accordingly, there exists a *bona fide* coverage dispute between Allied World and Defendant with respect to the nature and extent of Allied World's coverage obligations for the *Dykes* Suit under the subject insurance policy issued by Allied World.

## PARTIES

4. Plaintiff Allied World is an insurance company organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

5. Upon information and belief, Community Options is a corporation organized and existing under the laws of New Jersey, with its principal place of business in Princeton, New Jersey. The subject Allied World Policy, defined below, was delivered to Community Options, Inc. at its corporate headquarters in Princeton, New Jersey.

6. Defendant Community Options may be served with process through its registered agent for service of process in the State of New Jersey, or at its principal place of business: 16 Farber Road, Princeton, New Jersey 08540.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendant Community Options because Community Options is headquartered in New Jersey, maintains its principal place of business in New Jersey, and conducts substantial and continuous business activities within the State of New Jersey.

8. This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant Community Options, Inc. resides in this District for purposes of venue, and because a substantial part of the events or omissions giving rise to this action occurred in this District, as the issuance and delivery of the insurance policy at issue was to Community Options, Inc. at its headquarters in Princeton, New Jersey.

## FACTUAL BACKGROUND

**A.  The Policy**

10. Allied World issued Healthcare Excess and Umbrella Liability Insurance Policy number 0313-0897 to Community Options, Inc. for the period October 1, 2021 to October 1, 2022 (the "Allied World Policy" or the "Policy"). A true and correct copy of the Allied World Policy is attached hereto as **Exhibit A**.

11. The Policy was issued to Community Options at 16 Farber Road in Princeton, New Jersey.

12. Insuring Agreement 1.A. of the Allied World Policy provides excess Medical Professional Liability coverage on a claims-made-and-reported basis, with a $5,000,000 Specific Loss Limit.

13. Insuring Agreement 1.A. of the Allied World Policy provides the following insuring agreement:

> The **Insurer** will pay on behalf of the **Insured**, subject to the Limits of Liability set forth in the Declarations, **Loss** and **Defense Expenses** in excess of the **Applicable Underlying Limit** for the coverage identified in Item 1 of the Schedule of Underlying Insurance or Self- Insurance which the **Insured**

becomes legally obligated to pay as a result of a **Claim** alleging a **Medical Professional Incident**, provided always that:

1. such **Claim** is first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period; and

2. notice of such **Claim** is given to the **Insurer** in accordance with Section IV.D. of this Policy.[1]

14. The Allied World Policy defines "**Insured**" as the following, in pertinent part:

   1. the Named Insured;
   2. any Insured Entity;
   3. any Employee other than a physician, but only while acting within the scope of his/her duties as such;
   4. employed physicians, but only while acting within the scope of his/her duties as such, and only if listed in Schedule B;

15. The Allied World Policy defines **Claim** as "with respect to Insuring Agreement A., a written notice received by any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Medical Professional Incident**...".

16. The Allied World Policy defines **Medical Professional Incident** to mean "an actual or alleged act, error or omission by the **Insured** in the rendering of or failure to render **Medical Professional Services**."

17. As amended by Endorsement No. 2, the Allied World Policy Defines **Medical Professional Services** as:

   [S]ervices performed by an **Insured**, on behalf of the **Named Insured** or an **Insured Entity**, in the treatment or care of any person, including: medical, surgical, dental, nursing, psychiatric, mental health, osteopathic, chiropractic, or other professional healthcare or healthcare-related services; the use, prescription, furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental or psychiatric supplies, equipment or appliances in connection with such treatment or care; the furnishing of food or beverages in connection with such treatment or care; the providing of counseling or social services in connection with such treatment or

---

[1] Bolded and capitalized terms in the Allied World Policy are bolded and capitalized herein.

4

care; and the handling of or performance of post-mortem examinations on human bodies; but **Medical Professional Services** shall not include **Managed Care Activities**.

Standard services provided by community service, developmental disability and placement organizations as well as any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming.

18. Section IV.D. of the Allied World Policy sets forth several conditions with respect to the reporting and notice of **Claims** and circumstances. Its preamble states: " The **Insured** must, as a condition precedent to any right to coverage under this Policy, comply with the notice and reporting provisions set forth below."

19. Section IV.D.1 of the Allied World Policy states:

> 1. The **Insured** must provide the **Insurer** with immediate notice of any **Claim** first made against the **Insured** during the **Policy Period**, or any act, error, omission, fact, situation, **Occurrence** or **Medical Professional Incident** that takes place during the **Policy Period** and that could give rise to a **Claim** against the **Insured** (hereinafter, a "circumstance"), involving any of the following:
>
>   a. unexpected deaths;
>
> \*\*\*
>
> With regard to any Claim first made during the **Policy Period** as described above, such notice must be provided to the **Insurer** in writing no later than the Expiration Date of the **Policy Period** (or within thirty (30) days after the Expiration Date of the **Policy Period** if the **Claim** is first made against the **Insured** in the last thirty days (30) of the **Policy Period**). With regard to any circumstance as described above, such notice must be provided to the **Insurer** in writing no later than the Expiration Date of the **Policy Period**.

20. Section IV.D.2 of the Allied World Policy states:

> All **Claims**, and all circumstances, **Occurrences** and **Medical Professional Incidents** which may give rise to a **Claim** against the **Insured**, including but not limited to those described in Subsection D.1. above, must be summarized in a Quarterly Loss Run Report to the **Insurer**.

The Quarterly Loss Run Report shall include, at minimum:

(a) a description of the nature of the **Claim** or circumstance;
(b) the date the **Claim** was first made against the **Insured**, or the date the **Insured** first became aware of the circumstance;
(c) the date of loss;
(d) the claimant's name, the names of any involved parties;
(e) the status of the **Claim** or circumstance; and
(f) the reserved amounts for **Loss** and **Defense Expenses** for each **Claim** or circumstance;
(g) the paid and incurred amounts **Loss** and **Defense Expenses** for each **Claim** or circumstance.

The Quarterly Loss Run Report will serve as notice to the **Insurer** for those **Claims** not subject to the above reporting criteria, and must be received by the **Insurer**, in writing, no later than ten (10) days after the end of each calendar quarter with a final Loss Run Report to be received no later than the Expiration Date of the **Policy Period**. Such Quarterly Loss Run Reports must be sent to the **Insurer** electronically, or in writing by certified mail, express overnight mail, or prepaid courier, at the address specified in Item 5. of the Declarations.

The **Insured's** obligations under this Subsection D.2. will continue after this Policy expires, and will continue until the **Insurer** directs otherwise in writing.

21. Section IV.D.3 of the Allied World Policy states: "If the **Insured** provides notice of circumstances to the **Insurer** during the **Policy Period,** then the **Insurer** shall treat any subsequently resulting **Claim** against the **Insured** as if it had been first made against the **Insured** during this **Policy Period.**"

22. Section IV.D.4.a. of the Allied World Policy states:

As a condition precedent to the **Insurer**'s obligations under this Policy, the Insured will provide the **Insurer** with prompt notice of:

a. any settlement offer that the **Insured** intends to make, or any settlement demand made by any claimant, involving any of the matters listed above under D.1 or any offer or demand that may implicate coverage under this Policy;

23. Section IV.D.5 of the Allied World Policy states:

Notice to any underlying insurers of any **Claim** or circumstance will not be deemed sufficient to establish reporting or notice to the **Insurer**. Notice of a matter listed in subsection D.1 must be sent to the **Insurer** electronically or in

6

>writing by certified mail, express overnight mail, or prepaid courier, at the address specified in Item 5. of the Declarations.

24. The Allied World Policy contains a specific **Sole Agent** condition that governs the authority of the Named Insured to act on behalf of all insureds. Condition S. of the Policy states:

>**IV. CONDITIONS**
>
>\*\*\*
>
>**S.  Sole Agent**
>
>If there is more than one **Insured** named in this Policy, the first **Named Insured** shall act on behalf of all Insureds for all purposes, including but not limited to:
>
>1. reporting and/or giving of notice consistent with Section IV.D.;
>2. the payment or return of premium;
>3. receipt and acceptance of any endorsement issued to form a part of this Policy;
>4. giving and receiving notice of cancellation or non-renewal;
>5. reimbursement to the **Insurer** of any **Retained Amount** or **Self-Insured Retention** amount advanced by the Insurer; and
>6. election to purchase an Extended Reporting Period.

**B.     The *Dykes* Suit**

25. Defendant Community Options, a corporation headquartered in the state of New Jersey, operates residential and care facilities in multiple states nationwide.

26. Upon information and belief, Victor Dykes, a resident of Community Options group home for developmentally disabled died on August 11, 2022 at one of Community Options facilities.

27. The complaint in the *Dykes* Suit was filed on May 23, 2023. A true and correct copy of the complaint in the *Dykes* Suit is attached hereto as **Exhibit B**.

28. The *Dykes* Suit is brought against, *inter alia*, Community Options and certain individual Employees Mariah Ward, Kyle Petras, and Jennifer Laskowski, RN (collectively "Employees").

29. The *Dykes* Suit alleges Community Options and/or its Employees failed to provide Victor Dykes with sufficient fluids which lead to severe dehydration and his death.

30. The *Dykes* Suit asserts claims against Community Options for: Negligence and/or Medical Negligence Resulting in Wrongful Death; Negligent Hiring, Training, Retention and/or Supervision; violation of the Resident Abuse and Neglect Act, NMSA 1978, Sections 30-47-01 to 10; and violation of the New Mexico Unfair Practices Act, NMSA 1978, Sections 57-12-1 to 26 ("NMUPA").

31. The *Dykes* Suit seeks compensatory damages, punitive damages, treble damages, attorney's fees, and pre-judgment and post-judgment interest.

32. Despite the *Dykes* Suit having been filed in May 2023, Community Options, on behalf of itself or as the Sole Agent for its Employees under the Policy, did not provide Allied World with any notice of the *Dykes* Suit until September 24, 2025.

    **C.**    **Community Options' Tender of the *Dykes* Suit to Allied World**

33. On August 12, 2022, Community Options advised Allied World that a resident at one of their facilities, Victor Dykes, had died the previous day on August 11, 2022 (referred to hereinafter as the "Notice of Circumstance"). No other information was provided with the Notice of Circumstance.

34. By email to Community Options dated August 15, 2022, Allied World acknowledged receipt of the Notice of Circumstance and advised that it would treat the matter as a notice of circumstance which may give rise to a **Claim** under the Policy. A true and correct copy of this email is attached hereto as **Exhibit C**.

35. Allied World further advised in this letter, in pertinent part:

> [i]f this notice involves any of the circumstances identified in Section IV.D.1. of the Policy, please notify us immediately of any and all demand letters, correspondence, lawsuits, and/or other documentation the Insured may receive from the family of Mr. Dykes or from an attorney on their behalf. In addition, pursuant to Section IV.D.2. of the Policy, if a **Claim** is made for this circumstance (even if it does not involve any of the circumstances identified in

>Section IV.D.1. of the Policy), please also provide notice of it in a Quarterly Loss Run Report.

36. Community Options provided Allied World with no further information related to or concerning the Notice of Circumstance or Mr. Dykes' death until September 24, 2025.

37. Upon information and belief, Community Options did provide Berkshire Hathaway Specialty Insurance Company ("Berkshire") with notice of the *Dykes* suit, and Berkshire provided Community Options with a defense.

38. By email dated September 24, 2025, three years after Mr. Dykes death, and more than two years after the Dykes family filed a lawsuit against Community Options, counsel for Community Options finally advised Allied World that the *Dykes* Suit had been pending against itself and its Employees, and was proceeding to trial in April 2026.

39. Community Options, for itself and as the Sole Agent under the Policy of its Employees, informed Allied World that in May 2025, the plaintiff in the *Dykes* Suit sent a policy-limits demand in exchange for the release of all claims against Community Options and its named Employees in the *Dykes* Suit.

40. For the first time in September 2025, Community Options informed Allied World that a failed mediation in the *Dykes* Suit had taken place in August 2025, without Allied World's knowledge of same.

41. Upon information and belief, during the August 2025 mediation, the plaintiff in the *Dykes* Suit reiterated its demand for policy limits in exchange for the release of all claims against Community Options and the Employees in the *Dykes* Suit, without Allied World's knowledge of or participation in this mediation.

42. Upon information and belief, Community Options reached a settlement with Plaintiffs in the Underlying Action and now seeks indemnification under the Allied World Policy for the *Dykes* Suit.

## COUNT I
### (Declaratory Judgment – No Coverage Due to Breach of Section IV.D.1)

43. Allied World repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

44. As a condition precedent to coverage, Community Options, as the First Named Insured and Sole Agent of any Insured under the Policy pursuant to Condition S., must satisfy the notice and reporting requirements of Section IV.D.1.

45. Section IV.D.1 of the Allied World Policy requires the **Insured** to provide the **Insurer** with immediate notice of any **Claim** first made against the **Insured**, or any "circumstance," such as an unexpected death, that could give rise to a **Claim** against the **Insured**.

46. The Allied World Policy defines **Claim** as "with respect to Insuring Agreement A., a written notice received by any **Insured** that a person or entity intends to hold an **Insured** responsible for a **Medical Professional Incident**..."

47. Community Options provided Allied World with the Notice of Circumstance on August 12, 2022, advising of the death of Victor Dykes on August 11, 2022.

48. The Notice of Circumstance does not constitute a **Claim**, as defined in the Allied World Policy.

49. The *Dykes* Suit was initially filed on or about May 22, 2023.

50. The *Dykes* Suit constitutes a **Claim**, as defined in the Allied World Policy.

51. However, Community Options failed to notify Allied World of the filing of the *Dykes* Suit until more than two years later, on or about September 24, 2025.

52. The failure to notify Allied World of the filing of the *Dykes* Suit materially breached Section IV.D.1 of the Allied World Policy.

53. The Allied World Policy is a claims-made-and-reported policy of insurance.

54. Therefore, under New Jersey law, which governs the interpretation of the Allied World Policy, breach of Section IV.D.1 of the Policy alone is sufficient to deny coverage. Even though prejudice is not required under New Jersey law, Allied World was, in fact, materially prejudiced by Community Options breach of Section IV.D.1.

55. An actual controversy exists between Allied World, on the one hand, and Defendant, on the other, as to the foregoing issues.

For the foregoing reasons, Allied World is entitled to a declaration that it owes no coverage under the Allied World Policy to Community Options or its Employees with respect to the *Dykes* Suit due to the material breach of Section IV.D.1 of the Allied World Policy.

## COUNT II
### (Declaratory Judgment – No Coverage Due to Breach of Section IV.D.2)

56. Allied World repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

57. As a condition precedent to coverage, the first Named Insured must satisfy the notice and reporting requirements of Section IV.D.2.

58. Section IV.D.2 of the Allied World Policy states:

> All **Claims**, and all circumstances, **Occurrences** and **Medical Professional Incidents** which may give rise to a **Claim** against the **Insured**, including but not limited to those described in Subsection D.1. above, must be summarized in a Quarterly Loss Run Report to the **Insurer**.
>
> The Quarterly Loss Run Report shall include, at minimum:
>
> (a) a description of the nature of the **Claim** or circumstance;

    (b)    the date the **Claim** was first made against the **Insured**, or the date the **Insured** first became aware of the circumstance;
    (c)    the date of loss;
    (d)    the claimant's name, the names of any involved parties;
    (e)    the status of the **Claim** or circumstance; and
    (f)    the reserved amounts for **Loss** and **Defense Expenses** for each **Claim** or circumstance;
    (g)    the paid and incurred amounts **Loss** and **Defense Expenses** for each **Claim** or circumstance.

The Quarterly Loss Run Report will serve as notice to the **Insurer** for those **Claims** not subject to the above reporting criteria, and must be received by the **Insurer**, in writing, no later than ten (10) days after the end of each calendar quarter with a final Loss Run Report to be received no later than the Expiration Date of the **Policy Period**. Such Quarterly Loss Run Reports must be sent to the **Insurer** electronically, or in writing by certified mail, express overnight mail, or prepaid courier, at the address specified in Item 5. of the Declarations.

The **Insured's** obligations under this Subsection D.2. will continue after this Policy expires, and will continue until the **Insurer** directs otherwise in writing.

59. Community Options provided Allied World with the Notice of Circumstance on August 12, 2022, advising of the death of Victor Dykes on August 11, 2022.

60. Allied World received no further communications concerning the Notice of Circumstance, Victor Dykes, or the *Dykes* Suit until on or about September 24, 2025.

61. During the period August 12, 2022 to September 24, 2025, Allied World received no Quarterly Loss Run Reports containing the requisite information set forth in Section IV.D.2 of the Allied World Policy.

62. The failure to provide Allied World with Quarterly Loss Run Reports concerning the Notice of Circumstance, Victor Dykes, or the *Dykes* Suit materially breached Section IV.D.2 of the Allied World Policy.

63. The Allied World Policy is a claims-made-and-reported policy of insurance.

64. Therefore, under New Jersey law, which governs the interpretation of the Allied World Policy, the breach of Section IV.D.2 of the Policy alone is sufficient to deny coverage. Even

though prejudice is not required under New Jersey law, Allied World was, in fact, materially prejudiced by Community Options breach of Section IV.D.2.

65. An actual controversy exists between Allied World, on the one hand, and Defendant, on the other, as to the foregoing issue.

For the foregoing reasons, Allied World is entitled to a declaration that it owes no coverage under the Allied World Policy to Community Options and its Employees with respect to the *Dykes* Suit due to the material breach of Section IV.D.2 of the Allied World Policy.

## COUNT III
### (Declaratory Judgment – No Coverage Due to Breach of Section IV.D.4)

66. Allied World repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

67. As a condition precedent to coverage, any insured must satisfy the notice and reporting requirements of Section IV.D.4.

68. Section IV.D.4.a. of the Allied World Policy states:

> As a condition precedent to the **Insurer**'s obligations under this Policy, the Insured will provide the **Insurer** with prompt notice of:
>
> a. any settlement offer that the **Insured** intends to make, or any settlement demand made by any claimant, involving any of the matters listed above under D.1 or any offer or demand that may implicate coverage under this Policy;

69. Community Options provided Allied World with the Notice of Circumstance on August 12, 2022, advising of the death of Victor Dykes on August 11, 2022.

70. Allied World received no further communications concerning the Notice of Circumstance, Victor Dykes, or the *Dykes* Suit until on or about September 24, 2025.

71. In May 2025, Mr. Romero made a policy-limit settlement demand to Community and Employees.

72. In August 2025, a failed mediation occurred in the *Dykes* Suit.

73. In August 2025, Mr. Romero made another policy-limit settlement demand to Community and Employees.

74. The failure to notify Allied World of the May 2025 and August 2025 settlement offers, and the August 2025 mediation, each constitutes a material breach of Section IV.D.4 of the Allied World Policy.

75. The Allied World Policy is a claims-made-and-reported policy of insurance.

76. Therefore, under New Jersey law, which governs the interpretation of the Allied World Policy, the breach of Section IV.D.4 of the Policy alone is sufficient to deny coverage. Even though prejudice is not required under New Jersey law, Allied World was, in fact, materially prejudiced by Community Options breach of Section IV.D.4.

77. An actual controversy exists between Allied World, on the one hand, and Defendant, on the other, as to the foregoing issue.

By reason of the foregoing, Allied World is entitled to a declaration that it owes no coverage under the Allied World Policy to Community Options with respect to the *Dykes* Suit due to the material breach of Section IV.D.4 of the Allied World Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Allied World Assurance Company (U.S.), Inc. requests that judgment be entered in its favor and against Defendant Community Options, Inc. and asks this Court to:

A. Determine, declare and adjudicate that because Community Options materially breached the Allied World Policy, Allied World by owes no coverage to Community Options and its Employees for the claims asserted the *Dykes* Suit under the Allied World Policy;

B. Any and all further relief as this Court deems just and equitable.

Dated:  January 8, 2026

                              Respectfully submitted,

                              **KENNEDYS CMK LLP**

                              /s/ *Christopher R. Carroll*
                              _____
                              Christopher R. Carroll, Esq.
                              Jillian Dennehy, Esq.
                              400 Connell Drive, Suite 700
                              Berkley Heights, NJ 07922
                              Tel: 908-84806300
                              Fax: 908-848-6310

                              Attorneys for Plaintiff Allied World Assurance Company (U.S.), Inc.